Please rise, this court is now in session. Please be seated. Would the clerk call the next case, please? Case number 315-0413, Robert Walsh Appellant by Lloyd Brooks v. Central Mortgage Co. Appellee by Louie Clemente v. Thurston West Bank Appellee by Erin Watts. Thank you. Mr. Brooks? Yes. Good afternoon. Good afternoon. Good afternoon, Justices. I am Lloyd Brooks, and I'll be representing Mr. Bush this afternoon. And I think I'd like to say maybe three minutes for my rebuttal. You get five automatically. Well, I'll take all five. Well, then I'll get right to it then. There's also a motion pending to strike portions of the reply brief. There is. So that is being considered with the case for both of you, if you want to make any points on that. It's not required. I probably will address it very briefly as I go along with my remarks. Well, I think the crux of this appeal is the defendant's various motions to dismiss, which were granted by the trial court. One of the central errors that I believe was made by the trial court with respect to both defendants was not a proper adherence to the appropriate standards that should be considered on a motion to dismiss. And one of the keys to that is all of Mr. Bush's allegations should have been assumed true at the trial court level for purposes of evaluating these motions. And in certain key respects, I think that did not happen here. For instance, with central mortgage, my client alleged that he'd gotten only one truth and lender disclosure statement and I believe a total of two notices of right to cancel to share between himself and his wife. And the regulations made clear that there should have been two disclosure statements and four notices of right to cancel. So that allegation in and of itself now, he's asserted that a violation of TILA has occurred. That was not honored by the trial court. His claim against central mortgage was dismissed. Similarly, versus First Midwest, my client made a similar allegation that he did not get all of his notices of right to cancel, nor, I'm sorry, the disclosure statement for First Midwest was built into its actual loan agreement. So as to First Midwest, it was just the notices of right to cancel that were insufficient. I believe the trial court overlooked that allegation at the time of First Midwest's motion to dismiss and focused on other issues. So right away, we have that there was a pleading that was sufficient to assert a cause of action, yet the trial court overlooked it. In addition to that, there was some argument made by both of the defendants that somehow my client's claim to seek rescission was time barred. There was not a lot of time spent on that by the defendants in the appeal. However, and I think this is probably for obvious reasons, because in the interim, any assertion that might have been made by them to that effect has been resolved now by the U.S. Supreme Court in their recent decision of Jesenowski v. Countrywide, where the Supreme Court made it clear that so long as the consumer writes to either the creditor or asking whoever is involved within that three-year period to request the rescission, then even if a lawsuit is not filed in that same three-year period, the claim is still timely. Initially, there was some argument made by defendants at the trial court level that my client's claim was untimely because the lawsuit wasn't filed. We don't think their chronology was accurate in the first place, but it's now a moot point, because even if their chronology was accurate, the Supreme Court has resolved that issue. So then we move along mostly to what occurred in connection with First Midwest. As your honors know, this is actually the second time at least two of the three parties have been before this court in connection with this loan. And in connection with the first appeal, we actually sought to review the dismissal of central mortgage from our claim. The court decided that the cases weren't consolidated for that purpose, and so we've waited until now to be able to seek review of that order. Was there space for a complicated record on appeal? It did, it did. At least I feel like we were able to piece it together, but it did. There were things that were in the first record that also came here that initially weren't actually pieced into the record that was submitted, but I believe we've got it all here now. With respect to First Midwest, in the meantime, while the case was on appeal, they filed their own motion to dismiss the claims. And there it ended with Judge Staines writing his written opinion dismissing my client's claims. And so I want to focus for a moment just on those. There the issue became whether or not the notice of right to cancel that First Midwest now asserts that it gave my client. My client's denied that he'd gotten that, which I've already mentioned was overlooked by the trial court. But assuming for a moment that he had received that, we believe that it was still the delivery of it would have been insufficient, because when it would have been given to my client, it would have been more than three days after the closing. And before he was allowed to have it to review and to keep, he was then asked to sign a document that essentially acknowledged that he no longer had a right to cancel at that point. And both of those, we believe, are independent and separate violations of my client's rights, but certainly taken together, it's very hard to see how the average consumer would not have been confused. On the one hand, you're given a document that's supposed to say you've got three business days to cancel the loan. Even if you're going to overlook now that the date written in for those three days had expired before you were given the document. At the same time you're given this now expired document, you're asked to sign a second document that confirms for you that your right to cancel is gone already. Despite that, both First and West and the trial court seem to arrive at the opinion that my client's right to cancel started over again on that date, and he should have known that. Despite him having two documents, they both say that's not true. So there I find that the case law is quite clear that under those circumstances my client no longer had three days to cancel the loan. He had three years. That's the way TILA's rescission rights work. That if all goes well, the consumer has three business days from the consummation of the transaction to change their mind. However, if all does not go well, if there are problems with the disclosures, or they're never delivered to the consumer, they then have three years from the consummation of that loan to change their mind. It's our belief, and we've alleged, that several things went wrong with respect to my client, and he clearly then had three years to change his mind, and none of the parties dispute that he did change his mind within that three years. So this case really turns on, well, did something go wrong? Doesn't the case really turn on did the complaint state a cause of action to trigger the three-year period? But the trial court looked at the alleged facts and kind of resolved the facts and found there was a startle. And I might be wrong, but when I read the briefs, I'm looking at the complaint to say, did this state the proper cause of action for a three-year rescission period? I agree with you, Justice Wright, in the sense that, obviously, because we're here on a motion to dismiss, the first thing we've got to do is look at what did the complaint allege. And we did, in fact, allege that my client was not given the proper number of notices, that he was asked to sign this other document that would have led him to believe that he no longer had a right to cancel at the time he was given his disclosures. So that is all alleged in the complaint. And I think what Justice may be getting at is when Justice Stamets wrote his order, he seemed to assume a set of facts that were not alleged. For instance, that my client did get his notices of right to cancel. Well, we've clearly alleged the opposite of that. And he went on then, once we reached that point, to say, well, then I think under the circumstances, his three-day right should have started on the day he showed up and actually were given his documents. It was almost as if he was deciding a motion for summary judgment based on the pleadings rather than looking at the sufficiency of the complaint. Or am I mistaken? No, I think I would go along with that from the perspective that it seemed that Judge Stamets was assuming a set of facts that hadn't actually been alleged. There were arguments made by the parties with respect to their motions. And so some of the arguments may have made those assertions. But certainly First Midwest argues that they gave my client the notice when they were supposed to and so on and so forth. But those arguments contradict what's alleged in the complaint. And so in that respect, it is kind of like maybe Judge Stamets kind of decided facts with respect to the motion, which should not have been done at the motion dismiss stage. And so I do think that that's one of the key errors that was made is my client's allegations weren't honored for what they were. Both defendants spend some time on an argument that my client should have pled how or when he was going to pay the loan back.  And so it's addressed in the briefs, and I'll spend just a moment on it, which I think the U.S. Supreme Court recently has kind of resolved this issue as well. There had been a tendency by some courts to ask consumers to spell out up front, are you willing to give back the money that was loaned to you? The problem is on the motion dismiss stage, we're only supposed to be looking at the elements of the cause of action. In the TILA claim, there is no element of the TILA claim that pleads out, or says that a consumer has to plead how or when they're going to give back the money that was loaned to them. Instead, the statute has its own default procedure for dealing with that issue. And the issue is not even supposed to be addressed until after the creditor has fulfilled their obligations. And I think out of a sense of practicality, many courts just kind of want to skip to the chase. Let's get to the chase. Let's assume you're entitled to rescind. Let's figure out how this money is going to be given back. The problem is that's not part of the pleading requirements. Both defendants argue that it should be. Well, the U.S. Supreme Court now I think has resolved that as well in the same case, the Jastrzynowski decision, because Countrywide made a similar pitch in their briefs to the U.S. Supreme Court, that you have to look at TILA rescission as if it's rescission that we might see in equity. The problem is TILA is a statutory scheme. It has its own scheme for proceeding with rescission. And in that scheme, tender is not an upfront requirement for the consumer, although it would be in normal contract law. In normal contract law, if you look to rescind a contract, typically the plaintiff has to plead that they've offered to tender whatever it was they got out of the contract before they can get it rescinded. Not so in TILA. TILA specifically reverses that procedure. The U.S. Supreme Court acknowledged that and specifically commented on the fact that the common law concepts of rescission do not apply to TILA. I think that answers the question for this Court now as to whether or not Mr. Bush should be required to allege how or when he's going to tender back the proceeds from the loan. And just one more comment on that. In fact, the statute lays out certain circumstances for when the consumer doesn't have to tender back at all. So it certainly would be curious that if a statute has certain provisions that would allow for that, that the consumer nonetheless should be required to plead that they are going to pay the funds back and how and when that's going to be done. So I think for those reasons, certainly my client can't be held to that standard. And even if the Court thought that that was an appropriate pleading requirement, that was not what the trial court ruled on. The trial court seemed to focus on the time bar issues, which it got wrong, and then also particularly in Judge Stamos' decision. There's no mention whatsoever of pleading requirements. Judge Stamos concentrated on the fact that he thought no violation of TILA took place at all, so that we don't even get to whether or not Mr. Bush was required to tender. So the issue I think then is just looking at the pleading standards, and that's what I want to come back to, is that the appropriate pleading standards were not followed here by the trial court. And in following them and assuming that each of my client's allegations were true, then a cause of action has been pled that a violation of my client's rights under the Truth in Lending Act occurred, which case he did have three years to elect, he did so. Last point, this will go to the motion to strike, Justice Wright asked about a little earlier. Just briefly on that, there's the contention that a document was included in the appendix of my reply brief that should not have been inserted. And I think there the issue is that Central Mortgage brought up many new issues in its response brief that weren't handled at the trial court level. And in order to respond to those issues that were outside the original set of pleadings, the document was included mostly for the purpose so that the court could be illustrated that bringing up these new pleading or alleged pleading defects that Central Mortgage asserts are in the record would be prejudicial to Mr. Bush, because there were other things that happened. They weren't required to be pled, and so they weren't. And because they were never addressed at the trial court level, to now have Central Mortgage on appeal say, well, there are these other pleading defects or alleged pleading defects that we want to address, and they didn't comment on the record in a way that would lead the court to believe that other things happened that did not. And so the document was included for that purpose. It certainly is not in the record, although a similar letter written to the other defendant is in the record, if the court was interested in looking at that and it is cited in the briefs. With that, I'll rest. Thank you. Thank you. Mr. Minetti, you have 10 minutes. Good afternoon. Good afternoon, Your Honors. May it please the Court, my name is Lou Minetti. I represent Defendant Eberle Central Mortgage Company. Your Honors, this case was born out of Mr. Bush's failure to act timely in a separate foreclosure action. And this pattern of tardiness, without any explanation to the trial court, timely, was repeated in this case. It led to a procedural posture where Mr. Bush made all of his arguments for the first time in a motion to reconsider before the trial court. And the trial court, which is aware of the history of this case, and is aware of the much longer going on separate foreclosure action, and any lack of urgency shown by Mr. Bush regarding pursuing this case, didn't abuse its discretion when it denied the motion to reconsider. The procedural posture here is critical to reviewing a motion to reconsider in a Central Mortgage Company's case. It impacts the necessary showing Mr. Bush needed to make to prevail on the motion and it impacts the standard of review. When reviewing trial court's denial of a motion to reconsider based on new matters, such as new legal theories and new arguments that were not made in the progression leading to the order that's being challenged, a court of review employs an abuse of discretion standard. This was a central holding of the Mahomet case decided by Central Mortgage Company in its brief regarding standard of review. In that case, the court says, seeing as the plaintiff's motion to reconsider in this instance was based on a new legal theory, the standard of review in this instance is abuse of discretion. In fact, the county collector case that Bush cites in his reply brief, in that case, the Illinois Supreme Court characterizes its task as to determine whether or not the trial court abused its discretion when it allowed a new constitutional argument in a motion for rehearing. It doesn't include any language that this showing doesn't have to be made in certain types of motions to reconsider where all the arguments were made for the first time. So the case was clear that Mr. Bush needed a reasonable explanation to why he didn't make this showing, why he didn't argue this in the first instance in the motion to dismiss. Because as stated by the Daniels v. Corrigan case, when you include new matter in a motion to reconsider, it's effectively asking for a second bite at the apple. In this case, there is a clear pattern of failure to act through the foreclosure case and accumulating throughout this case in the motion to reconsider. Taking the totality of Mr. Bush's actions here, and they're important in the foreclosure because they lead to the creation of this case. In the foreclosure, Mr. Bush filed affirmative defenses and counterclaims, TILA ones. And they were stricken. Mr. Bush was given 28 days to replete. He failed to do so. After that window had closed, counsel for Mr. Bush came in and asked for leave to amend. That motion was denied because Bush could not articulate a proper reason as to why he didn't timely file an amendment. Two months after that order was entered, this case was filed. And Mr. Bush unabashedly admits that it is what he wanted to file in the foreclosure as an affirmative defense and counterclaim. Central Mortgage moved to strike that count against it. An agreed briefing schedule was set by the parties. But Mr. Bush didn't respond in writing and didn't show up at the hearing. And the count against Central Mortgage was stricken. Highlighting that the delay in this case by Mr. Bush was the fact that months later, he admitted he knew this order existed. At a separate hearing in the foreclosure case, which is consolidated with this one, he admitted at summary judgment he knew this order existed. But it wasn't until summary judgment was entered in the foreclosure case that he decided to bring a motion to reconsider six months after the order was entered in this case. And he didn't provide any explanation in the motion as to why he failed to act, why he waited six months, and why he was just bringing all these arguments for the first time now. This was a strategic choice by Mr. Bush having to do with how he once viewed this case related to the foreclosure case. At one point, Mr. Bush thought that this case and the foreclosure case, because they were consolidated, had merged into one case. And so in a very literal sense, these claims, these TILA claims, were in the foreclosure. This court flatly rejected that notion in the prior Rule 23 order from two years ago, that they're not one case, they're separate still. But the fact that he made a strategic choice to do what he did based on his view of the case, he shouldn't be extricated from that procedural bog simply because this court corrected him as far as his merger theory. Turning to the issue of tender, which Mr. Brooks brought up in his opening remarks, the dismissal of Bush's claims was proper because at no point did he articulate or show an ability to tender rescission amounts. And in fact, as the case went on, it became apparent that rescission or tender was not possible. Rescission, even TILA rescission, is an equitable remedy. And as the Seventh Circuit's noted, tender, returning the funds by the borrower, is an inherent part of rescission. It is not, as the Seventh Circuit has said, an occasional effect of rescission, as if they're two separate things and sometimes tender happens. So you disagree that the U.S. Supreme Court decision changed that? No, Your Honor, not Jesnowski. Jesnowski did not stand for the proposition that you don't need to plead tender. Jesnowski was the sole and limited issue of when is a notice of rescission effective? Is it when it is sent, or does the borrower have to take the initial step of filing a complaint to enforce rescission? Is it not good until that moment? Jesnowski came down. They resolved the issue of when a rescission notice is effective. It's when it's sent. But the court did not make any holding about tender or pleading an ability to tender or anything like that. In a last-ditch effort, the bank made the alternate argument in Jesnowski that the court should borrow from common law principles of rescission, and because in common law rescission you need to do something more than simply send a notice. And the court rejected that invitation and said, no, TEAL is different. In the context of what it means to have a correct rescission notice, we're not going to adopt common law rescission principles and say you need to do more. But they didn't resolve what you need to do to tender or how that's properly pleaded, articulated, or demonstrated in a case. And as I said, the Seventh Circuit is clear that it's an inherent part, tender is. And if tender is not possible, then rescission, they say, by any definition, has not taken place and there is no benefit to claim. So despite Mr. Bush's argument that conditioning rescission on tender is inappropriate, the official interpretations to Regulation Z, which remain consistent and are in this current form, do state that where a consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing procedures to the tender of any money or property. And even the cases cited by Bush regarding whether or not tender is a pleading requirement, they even acknowledge that it is an important aspect of rescission. And in fact, Longberg v. Freddie Mac, they acknowledge that at some point in the case, it could become very relevant whether or not tender is possible. And in this case, it's important that at no point in the pleadings, in any of the motions, through the years that this case dragged, Mr. Bush did not make any attempt to show or demonstrate that he was willing or able to tender rescission funds. And in fact, Your Honors, the court in its second memorandum, its second to last order, made a finding in two places that Bush had reported to the court that he was no longer seeking rescission as a remedy. So given that, given the language of the Seventh Circuit, the practical effect of that development was that tender, to the extent that the, and Bush does not dispute that. He disputes that he never made a motion to dismiss his rescission claims. But he doesn't dispute that it was reported to the circuit court that he was no longer seeking rescission as a remedy. As a result of that, rescission by any definition did not take place, even if he was correct in his pleading requirements, and there was no benefit to claim. Lastly, I'd like to touch on this continued theme of delay that's exacerbated in this case, particularly because now this case and the foreclosure case against the central mortgage have the same claims, and the continuing pursuit of this case is a direct harm to my client. These identical claims are before the circuit court of Will County. Bush admitted that this TILA lawsuit was what he wanted to file in the foreclosure, had his motion to amend not been denied. He stated that they denied our motion, at which point we had no choice but to file a separate action asserting the same claims. But he did have another choice. He took it. He appealed the foreclosure orders and secured a reversal. And since September of 2014, these identical claims about TILA and rescission have been operative in the circuit court of Will County in the foreclosure case. And so it compounds his failure to appropriately and diligently pursue this case that it should not flow to his benefit, but it does when it creates profound uncertainty when he's pursuing this case while the identical and duplicative litigation is currently before the circuit court of Will County. It causes a delay in the foreclosure because it's pursuing this case. It means it's that much longer before the central issue of rescission is fully determined. And so any negative consequences that spring from the splintering of Bush's claims and pursuing them here and now in the foreclosure action where the identical claims exist, any negative consequences should be borne by Mr. Bush. I'll turn things over now to counsel for Smith West Bank, but for those reasons, the orders in favor of central mortgage should be affirmed. Thank you. I have a question based on the record. There was a ruling, I believe, on November 17th of 2011 that allowed your motion to dismiss. The court gave Mr. Bush an opportunity to brief the issues, but a brief was not filed. I'm looking at page 6 of your brief where you recite the history. Yes. Was that dismissal granted by default? There's no indication that it was entered by the court simply because Mr. Bush didn't appear. I don't believe there's any discussion by Judge Siegel that, oh, I'm only entering this because there was no response. It was well within his authority to deny a motion that he didn't believe should be granted. But I don't think that happened. So isn't that the ruling they're appealing? Your Honor, the ‑‑ The untimely motion to reconsider that that was filed six months later? Yes. I get your point that it wasn't timely and it should be reviewed for an abuse of discretion, but the court denied that, denied the motion to reconsider. Correct. So aren't we back to square one and just looking at whether the merits of the November 17th hearing were based soundly on the law? Well, I would say, Your Honor, that the more important procedural hurdle for Mr. Bush is the motion to reconsider simply because he failed to respond and put himself in that procedural quandary. But regarding that point, regarding the merits, I'll briefly state this. The three types of remedy he's seeking in this TILA action, the order striking the count against central mortgage should be affirmed for reasons both that were articulated in the motion itself from central mortgage and because things which have since come to light throughout the continued litigation and which mean that the holding should be affirmed for the reasons supported and are apparent in the record on appeal. And I'll briefly state the three reasons. One, the damages regarding any violation at origination. It was always untimely. It was always barred by the statute of limitations. And, in fact, counsel on appeal has abandoned any sort of damages from the origination of the law. He explicitly did that in his brief. Second? Count three. Yes. Recision. Again, regarding tender and the Seventh Circuit's description of how it's central to rescission, again, if the court is making a determination that he's no longer pursuing rescission, then that claim falls out. Regarding the only other remedy he's seeking in his complaint, regarding the failure to respond to the rescission request, there are two issues with that. One was the pleading itself. It was vague and it didn't support an event of rescission. He didn't point to any dates. And, again, I don't mean to interrupt you, but I want to understand the standard of review. And I do agree the denial of the motion to reconsider is reviewed for an abusive session. I don't think we stop there. I think we go back to the ruling on the merits because we remanded in the first appeal saying that that was not a final judgment. So I think that's a little bit of that complicated procedural history that makes this appeal difficult. Do you disagree that if we do look at the November 17th ruling, it's de novo? If Your Honors reach back to a simple application of the grant of a 619-615 motion to dismiss, yes, that's de novo. Okay. But, again, Mr. Bush did not respond to that motion. He made no attempt to in writing or at the hearing. Which is why I asked, was it granted by default? Yes, Your Honor. Was it argued? Was that motion to dismiss argued? I don't believe the circuit court had any questions of counsel from the bank. Was it set for argument? Yes. It was set for hearing. It was set for hearing after a briefing schedule. So argument would have normally occurred at that date. And, Your Honor, just regarding, even if Your Honor reaches back, I've explained the other two remedies. Regarding the remedy about not responding, it never articulated any event of rescission in the complaint. No attachments are given to the complaint showing the letter of rescission. So it was never properly articulated in the complaint. It was properly stricken. And Your Honors can affirm it on that ground. What about a lawsuit filing or requesting to rescind? Isn't that notice that you want to rescind? That the lawsuit itself? I fail to see how the complaint itself, this complaint, this TILA complaint, can be the legally operative document. Because it can't be both the rescission and then 20 days pass. It kind of turns on itself. And regarding the motion to reconsider, again, in his motion to reconsider, to the extent that he had any opportunity to preserve those issues regarding the letter of rescission, the motion to reconsider doesn't raise any theory about timeliness because of one year from the notice. He only argues that it was timely. My question has caused you to go over a time limit. I apologize, Your Honor. No, I triggered it, but I need to end it. Yes, Your Honor. Thank you. Thank you, Mr. DeMattei. Mr. Doyle, you have five minutes. Good afternoon. Good afternoon, Your Honors. Counsel, may it please the Court. My name is Aaron White, and I represent Appali First Midwest Bank. First Midwest Bank complied with its obligations under TILA by providing Mr. Bush with timely and adequate notice of his right to rescind the loan First Midwest Bank had made. And for that reason, Mr. Bush was not entitled to the extended three-year period to rescind the loan. One of the issues that counsel raised was that the pleadings state that Mr. Bush did not get his notices from First Midwest Bank. The complaint does say that First Midwest Bank did not deliver any notices until after the three-day period had expired, and he wasn't given the notices until after he executed an election not to rescind the note. And then in an affidavit that Mr. Bush did submit, he says that the closing occurred on March 17, 2008. He signed the notice of right to cancel, indicating that he had received copies, but he alleges that he wasn't allowed to take them home within that date. He returned to the title company four days later. He was asked to sign this election not to rescind, and then at that point he was given the documents that he had signed a closing. So I believe that the complaint as pled does admit that the disclosures were received and that the argument here is not that they weren't received, but that they weren't received on time. They weren't received at the closing when they should have been given. In terms of the timeliness of the disclosures, Section 1635A of TILA provides that a borrower has the right to rescind the loan until midnight of the third business day following either consummation of the loan transaction or after the delivery of the requisite disclosures. So the fact that the disclosures weren't given at the closing does not violate TILA itself. The statutory provision here anticipates that those notices may be given after the closing, and that's what happened here four days after the closing. As to whether the notices that were given to Mr. Bush were adequate and did not create confusion that would violate TILA, First Midwest Bank thinks that the Palmer v. Champion mortgage case, which it cites in its brief, is on point here. And the facts are very similar in the types of notice that First Midwest Bank gave. They do really match up there. Mr. Bush took out the loan. We believe the pleadings show that he's alleging that he received the notices, but that he didn't receive them timely. And the notice that he was given indicates that he has three business days to rescind the loan transaction, and those three business days run from one of three enumerated events, whichever occurs last. And those three events are the closing of the loan transaction, the receipt of the TILA disclosures, and the receipt of the notice of right to cancel. So if we take the pleadings as they are, the three-day period to rescind the loan began to run on March 21st, the day that Mr. Bush actually received the disclosures. In the Palmer case, it was a very similar, almost- So let me just ask you a question, because that's what I seem to do best. If the document that Mr. Bush signed stating he did not wish to rescind was signed three days after March 21st, if that document was signed three days later, we wouldn't be here, would we? The difficulty arises in this case is just because the date you think the documents were properly delivered, and correct me if I have the facts wrong, that they were delivered on the same date as the rescission form was tendered and not signed. If it was just tendered but not signed for three days, it would be different. The notice of right to cancel itself had an acknowledgment on the face of it that indicated that Mr. Bush had received all the copies of the notice of right to cancel, and that was signed on the date of the closing, March 17th. Then on March 21st, four days later- Say that again. Say that again. On the face of the notice of right to cancel, Mr. Bush signed an acknowledgment indicating that on March 17th he had received all the requisite copies of the notice of right to cancel. His allegation in the complaint, which we're taking as true just because at this stage in the litigation we must, is that he actually wasn't able to take copies of those home with him, and that he came back to the title company four days later. At that point, he was asked to sign an election not to rescind, was given copies of the documents, and then that would have been the point at which the three business days would have started running. As to the election not to rescind, I think that's important to address. The election states that three business days have elapsed, and I have not rescinded the loan. Let me actually quote the language. It states that, quote, has not exercised his right to rescind or cancel the transaction under state or federal law. Close quote. He's not saying that the period has expired, that he's waiving his right in any way. It's just a clear, it's memorializing what happened, that three business days had elapsed, and to that date he had not canceled the loan. Why do you think that's important? You're saying, he was just saying as of March 21st he wasn't going to rescind, but your argument is he had still had three more days, and he knew it. Correct. That as of March 31st, he knew he had three more. Thank you very much. As of March 21st, he had three more days as of that date, and he knew it, and the clear language of the election not to rescind does not anywhere say that he's waiving that right, or that the time period has expired. I understand your argument. It was an important point to make. Unless there are further questions, First Midwest Bank would ask that the trial court's ruling be affirmed. Thank you, Mr. White. Mr. Burwell. Briefly a few points, Justices, and I'll start with First Midwest since that's probably precious in everyone's mind. I'll start with the last point that Mr. White attempted to make, that somehow my client signing this election not to rescind did not interfere with the fact that, according to them, he'd just been given his three days. The election not to rescind form, which is in the record as well as in the appendix, has very important language in it other than what Mr. White just read. What page of the appendix? It's page 47 of the appendix. It starts off with the reading, I, we, do not wish to rescind. Right away, we're starting with a statement that says, I think rescission is over because I'm telling you I don't want to do it. That in and of itself tells any consumer, as a result of signing this, you should have the impression that you no longer have a right to rescind. The next parenthetical is also important. It says, do not sign this document until after time for rescission has expired. Well, why would they include that into the form? There's only one reason. The purpose of this document was to impress upon the reader, particularly the consumer, that your right to rescission is now over with. Now, are some of the factual statements in here potentially true, that three days has been three days elapsed since we extended credit to you? Yes, that's true, but as Mr. White has already conceded, that in and of itself does not mean your right to rescission has expired. So by having my client sign this document on the same day he was given the notice, at least according to their assertions, in and of itself does cause confusion. And I'm not conceding that giving him the document late, even without that, election is still a violation. And why is that? Well, the line where they fill in that date had ended before my client got the document. The Johnson v. Thomas case, which is an Illinois court decision, specifically found that set of facts troubling enough that it also says that delivering a consumer a notice of right to cancel on a date in which the filled-in date has already passed is confusing and violates TILA. Now, I agree with counsel on one point. Delivering a notice of right to cancel after the closing by itself is not necessarily a violation of TILA. And that is because you can start the three days from the day you deliver. The problem here is they've already filled in the date to tell my client when the rescission period ends. That date was gone. And they rely a lot on Palmer. I don't know why the trial court also agreed to rely on Palmer when there's an Illinois reviewing decision on point already. But nonetheless, they rely on Palmer. And even Palmer does not apply here because, as other courts have said that have looked at Palmer, where a business holiday or other normal day, like Saturday or Sunday, where the average consumer would not consider a business day, falls inside that time period, it automatically makes the calculation to the average consumer thrown off. Well, why is that? TILA, for whatever reason, Congress included Saturday as a business day for only one purpose, calculating the time when the consumer knows when they are supposed to cancel. The average consumer is not aware of that. And so the average consumer, when told business day, is not going to count Saturday. And, in fact, we know that's true. Even counsel in this case did it. The trial court did it. They all skipped Saturday as a business day. And in their opinions and in their briefs, they've all said, oh, well, his right to cancel is supposed to end March 26th. Not true. If he was given that document on the day you thought he was, his right to cancel would have ended on the 25th. That fact alone underlines how confusing it can be for someone to figure out when they're supposed to have their deadline for canceling. So I'm going to move on. A couple of points made by central mortgage. Looking at the standard of review here, I think we really do end up with a de novo review. And for one reason. Even if we're looking at the rulings made by the trial court in the motion to reconsider, which I concede is generally an abuse of discretion. The case law seems pretty clear. When the error that was brought to the trial court's attention is one of the application of law, you end up with a de novo type of review because any misapplication of law by the trial court is an abuse of discretion. The case law says that. So whether you're looking at the original November ruling, which I think we do have to get back to that, because you can't escape that the trial court granted central mortgage's motion to dismiss, and now you get to look at the legal underpinnings of that decision. That gives you a de novo review. If you're looking at the motions to reconsider, I still think you end up with a de novo review type of review, but only because this happens to be misapplication of law. And one further point on that motion to reconsider. Counsel brings up all the arguments about why the motion to reconsider should not have been granted. The problem is none of those were the basis for the trial court. None of those were even arguments made by central mortgage with respect to whether or not the motion to reconsider should be granted. The reason the trial court denied that motion is because it felt that statutorily it was barred from doing so because the argument was made that 30 days after the motion to dismiss was granted, the trial court lost jurisdiction over that ruling. We now know that that's just not a correct reading of the law, that the trial court had 30 days until after the entire case ended to revisit that decision. And because the trial court, even in denying the motion to reconsider, did so based on its erroneous application of law, this court certainly has the ability to reverse that decision. If for no other reason than to remand it for a proper consideration of the motion to reconsider because it was never properly considered on its merits because the trial court was also entitled to it. I'm not sure I agree with your interpretation of procedure. Count one was dismissed. Correct. Was there an argument in November or whatever? There was no argument. The report of proceedings seems quite clear that I think the trial court called the case maybe once. It may have called it twice. I'm guessing you weren't involved in the case at that time. No, I was, but I was not present at that hearing. When no one stepped up on behalf of Mr. Bush, the trial court simply said, motions granted. So there was no actual exchange between the attorneys for the lenders and the court. And why do you think you didn't have to file a motion to reconsider that decision until 30 days after the ruling on this Midwest case? Because Illinois Supreme Court Rule 304A says every decision made by a trial court is rather final or not, as to one party, is not final if there are other claims of other parties still existing. That's the case here. First Midwest was still a part of the case. There were claims existing against them. So until the trial court resolved First Midwest. All right. Thank you. You've clarified my confusion. And that's my point there. And because the trial court misunderstood that point, it thought that it had no jurisdiction to consider the motion to reconsider at all. So the trial courts actually never looked at the merits of the motion to reconsider. I appreciate you taking that extra time to clear up my confusion. No problem. Unless there are other questions. Thank you. Thank you. We thank all of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a plan of change. Please rise. The court stands in recess.